Tom, J.E,
dissents in a memorandum as follows: I respectfully disagree with the majority and conclude that the oral agreement between the parties was not enforceable under the circumstances of this case.
The parties, who are sisters, assert an interest in real property comprising the substantial portion of the estate of their deceased brother, Joseph Dinko. Their dispute arises out of decedent’s execution of two wills. The first, made in 1990, left a certain parcel of real property located in the County of Queens to plaintiff, defendant and a nephew in equal shares, with the rest of his estate to be divided equally between plaintiff and defendant. That instrument was superseded by a will executed in 1991 that left all of his property to defendant.
Dinko, one of 10 siblings, died on February 12, 2003, leaving neither a widow nor children. By that time, the parties had forgotten about the 1991 will and proceeded under the impression that the 1990 will, a copy of which was in plaintiffs possession, was the operative instrument. While their attempt to find the original was unsuccessful, they did locate a copy of the 1991 will. Efforts were then made by defendant to locate the original of the 1991 will but to no avail. Because the original 1991 will could not be located, the parties consulted with a lawyer, and plaintiff agreed to support defendant’s effort to probate the copy of the 1991 will and to share expenses related to the lost will proceeding; in return, defendant agreed to share the estate equally.
While the agreement was never reduced to writing nor submitted to the Surrogate, the parties do not dispute its material terms, which are mutually beneficial. If the original 1991 will could not be located, Dinko would be deemed to have died intestate, resulting in his property being divided among his nine surviving siblings rather than just the two sisters party to this action. Furthermore, Dinko had been an alcoholic, requiring hospital treatment on numerous occasions, and the parties reasoned that if they were united in the attempt to probate a copy of his 1991 will, their siblings would be less likely to challenge it.
At the time of the parties’ agreement, they both believed that an original will could not be found and no discussion was had concerning what would happen if the original were found. *406 Shortly before the scheduled commencement of trial in the lost will proceeding, plaintiff learned that defendant’s husband had located the original of Dinko’s 1991 will. Defendant called plaintiff and told her that the original of Dinko’s 1991 will had been found, that she no longer needed to proceed with the lost will proceeding, and that she would no longer share Dinko’s estate. Defendant sent plaintiff a check representing the expenses that plaintiff had paid, plus interest, but plaintiff returned it. Defendant submitted that instrument for probate, and the entirety of the Dinko estate was awarded to her pursuant to its terms. While the proceedings before Surrogate’s Court are not included in the record, it does contain a waiver of process and consent to probate the original 1991 will, executed by plaintiff in February 2005, together with a cover letter from counsel reserving plaintiff’s claims against the estate in spite of her waiver.
Defendant sold the subject property for $1.2 million, and did not share with plaintiff the estate proceeds. This action for breach of contract followed. The complaint, which seeks one half of the sale proceeds together with interest, was dismissed by Supreme Court on the ground that, at the time it was made, the parties were under the mistaken belief that the original of the 1991 will had been lost.
On appeal, plaintiff contests dismissal of the complaint, assigning error to Supreme Court’s equitable finding that the agreement was subject to rescission due to the parties’ mutual mistake. She argues that since the original was in defendant’s possession all along and defendant concedes having searched the very location where it was ultimately found by her husband, any mistake was unilateral on her part. Plaintiff relies on case law holding that a party may not invoke mutual mistake to avoid the consequences of that party’s own negligence (citing Da Silva v Musso, 53 NY2d 543, 551-552 [1981]). However, I conclude that the distinction between unilateral and mutual mistake has no bearing on the parties agreement and misses the dispositive issues in this case; on this, I disagree with the majority. Here, the agreement was only contingent, and the contingent event never occurred, thus, there is no need to analyze whether there was a mistake that would excuse a party from performance.
While there is no dispute that there was an oral agreement, it was conditioned on defendant commencing and successfully concluding a lost will proceeding, making the underlying consideration of the agreement contingent on that event. This is clear from the parties’ agreement to share the proceeds at the *407 successful conclusion of the lost will proceeding. Although both parties initially assumed, incorrectly as it turned out, that a lost will proceeding would be the only manner of probating the estate and avoiding an intestate distribution, such misapprehension is not dispositive here. Rather, the explicit agreement, that plaintiff would not challenge defendant with respect to the anticipated lost will proceeding and that defendant upon its successful conclusion would pay to plaintiff half of the estate assets, necessarily was enforceable only if a lost will proceeding was, indeed, commenced and successfully concluded. It was not. When the original 1991 will was located, all the underlying circumstances of the verbal agreement changed. The triggering event of the parties’ oral agreement never materialized. To hold otherwise, I conclude, would essentially alter the terms of the oral agreement.
Nor do I see how assertions about defendant’s carelessness enter into the analysis, plaintiffs apparent suspicions notwithstanding. The plaintiff alludes to the fact that even if defendant had known that she would be probating the original of the 1991 will, she may have valued plaintiff’s support as against the remaining siblings in view of what is termed the decedent’s alcoholism, to bridge the legal gap between the contemplation that a lost will proceeding was necessary and defendant’s filing the original 1991 will to be probated. However, this, too, conflates two different kinds of proceedings. More importantly, that was not the agreement. Rather, the agreement concerns the distribution and sharing of the estate only if a lost will proceeding was pursued to its successful conclusion and not the probate of the original 1991 will. It is undisputed that during the negotiation of the agreement, the parties never discussed the probate of the original 1991 will. Moreover, the impact of the alcoholism issue is speculative as is any outcome of a contested proceeding, especially since simply adding plaintiffs support over the presumed opposition of several other siblings would not have altered Surrogate’s Court’s analysis. Nor was defendant unjustly enriched, since the will, as probated, dictated the decedent’s wishes as to the disposition of his assets. The result may be ungenerous, but not unjust. Hence, I do not see how this action is viable.
Furthermore, plaintiff is attempting to accomplish by indirection that which she is precluded by law from accomplishing directly (see Broadwall Am., Inc. v Bram Will-El LLC, 32 AD3d 748, 751 [1st Dept 2006], lv denied 8 NY3d 805 [2007]). It is apparent that had the parties’ stipulated settlement been submitted to the Surrogate, it would not have met with approval *408 because the effect of the agreement is to rewrite the will to avoid the unambiguous disposition made by the testator (id.; cf. Matter of Beckley, 63 AD2d 855 [4th Dept 1978], appeal dismissed 45 NY2d 837 [1978] [ambiguity as to intended beneficiary]). Unable to contest the award of Dinko’s estate to defendant before the Surrogate, plaintiff has resorted to a plenary action in Supreme Court. By instituting this action, she seeks what amounts to a nullification of the Surrogate’s decree. This Court has noted that interaction among judges of concurrent jurisdiction is governed by the principle of comity (see State of New York v Thwaites Place Assoc., 155 AD2d 3, 7 [1st Dept 1990], citing Pennsylvania v Williams, 294 US 176 [1935]). As observed in Matter of Dondi v Jones (40 NY2d 8, 15 [1976]), “a court should not ordinarily reconsider, disturb or overrule an order in the same action of another court of co-ordinate jurisdiction.” The same principle applies where different actions involving the same parties and issues are prosecuted in different courts or even different jurisdictions (see e.g. White Light Prods. v On The Scene Prods., 231 AD2d 90 [1st Dept 1997]).
Accordingly, the order of the Supreme Court should be affirmed.